## BELL et al. v. SAUSALITO LAND AND FERRY COMPANY.

### No. 14,367; June 13, 1893.

#### 33 Pac. 449.

**Easements—Water Rights.—Plaintiff, With Defendant's** consent, conducted water to a tank on his lot from a spring on defendant's lot. Thereupon he took possession of another lot, owned by defendant, and conducted water to the latter lot from the tank. Having used the water about eight years, he surrendered possession of the lot to which he had no title, and about a year thereafter purchased the same with its appurtenances, and sold the lot on which was the tank. In the conveyance to plaintiff no mention was made of the right to use the spring, but there was evidence that it was understood that he might use it so long as defendant did not need it. Held, that plaintiff had no water rights in the spring appurtenant to the lot.

**Easement—Water Rights.—The Court Having Found** for plaintiff in an action to enjoin the cutting off of the water, an assignment of error that there was no evidence to show any grant of the use of the waters of the spring to plaintiff was sufficient.

**Easement—Water Rights.—And so of an Assignment** that there was no evidence that an easement had been created in favor of the premises deeded to plaintiff, or that a servitude had attached to the land where the spring was located.

**Easement—Water Rights.—An Assignment That There** was no evidence to show the existence of an easement at any time in favor of plaintiff's land to the spring was likewise sufficient.

APPEAL from Superior Court, Marin County; E. B. Mahon, Judge.

Action by Julia Emma Bell and another against the Sausalito Land and Ferry Company. From a judgment for plaintiffs, defendant appeals. Reversed.

F. Wm. Reade and John Currey for appellant; Taylor & Craig for respondents.

HAYNES, C.—This action is for an injunction to restrain defendant from removing certain water-pipes, and depriving plaintiffs of water supplied thereby, from a certain spring,

and for damages for alleged interruptions thereof. The executors of Alexander Forbes were made parties defendant, but they did not answer, and do not appeal. Plaintiffs had judgment granting a perpetual injunction, from which, and an order denying the corporation a new trial, it now appeals.

There is no material conflict in the evidence. Mr. Bell was the only witness on the part of the plaintiffs, and the testimony of defendant's witness was mainly to additional facts, which were not rebutted. In 1874 the plaintiffs were the owners and in possession of lot 2, block 29, of the village of Sausalito. Appellant had formerly owned that lot, and was then the owner of lots 3, 4, and 5 in the same block, and also of another lot, upon which was a blind spring, about six hundred feet distant from lot 2, and which, with the knowledge and consent of appellant, plaintiffs improved, and conducted the water therefrom through pipes to a tank on lot 2, and from which water was supplied to their dwelling on said lot. In 1875 plaintiffs bid off said lots 3, 4, and 5 at an auction sale, but made no payment thereon, and obtained no title, but afterward took possession of them, and conveyed water by pipes from the tank on lot 2 to said lot 3, and used water thereon for cultivating vegetables. One or two years prior to June 21, 1884, plaintiffs surrendered possession of lots 3, 4, and 5 to appellant, and on the date last named Mrs. Bell entered into a contract in writing with appellant for the purchase of lot 3 for the sum of $500, and completed her payments and received a deed therefor February 25, 1886. About the time said contract of purchase was made plaintiffs conveyed lot 2 to the Forbes estate, built a house on lot 3, and removed thereto. In the fall of 1884 appellant cut off the connection between the spring and the Forbes tank on lot 2 by taking up the pipe near the spring, and at the same time connected the tank with appellant's water-mains, from which the tank was thereafter supplied, and for the water so furnished the usual rates were charged and paid. The contract of sale of lot 3 to Mrs. Bell was silent in regard to water rights or any appurtenances to the lot. The deed granted the lot with its appurtenances, but made no mention of the water by reservation or otherwise. The complaint alleged that the water from said spring had continuously and openly, and with the full knowledge of, and without objection from, and with the ac-

quiescence of, defendant, been·used on lots 2 and 3, and that
for more than five years the use of the flow of water from
the spring had attached as an appurtenance to lot 3.   The
complaint also alleged that on March 30, April 16. and May
5, 1885, and on two different occasions in 1886, appellant re-
moved a portion of the pipe which conveyed water to lot 3.

It is contended by respondents that the assignments of error
are insufficient, and for that reason the judgment and order·
should be affirmed.   Appellant specifies that "there was no evi-
dence to show any grant of the use of the waters of the spring
to the plaintiffs.   There was no evidence to show an ease-
ment had been created in favor of the premises deeded to
plaintiffs (lot 3), or that a servitude had attached to the
land where the spring was located.   There was no evidence
to show the existence of an easement at any time in favor of
the plaintiffs' land to the spring referred to."   It is also
specified that the above facts are not found by the court.   We
think these specifications sufficient.   They call attention di-
rectly to the controlling questions in the case, and are to be
viewed in the light of the findings as made by the court.   The
findings are merely of probative facts, unless the conclusions
drawn from them, and styled and intended as conclusions of
·law, may be regarded as ultimate facts.   These conclusions
are as follows: "(1) The hydrants and pipes and the water
flowing from said spring to and in the same are necessary
for the benefit and enjoyment of said lot 3, and are appurte-
nant to said lot.   (2) The appurtenances, including said
hydrants and pipes and said water and the use and flow
thereof, passed to the plaintiff Julia E. Bell, by said deed.
(3) The plaintiffs are therefore entitled to a decree as prayed
for in their complaint."   If the first and second of the above-
quoted conclusions are to be regarded as findings of fact, they
are not justified by the evidence; and if they are conclusions
of law, and not findings of fact, the ultimate facts are not
found, nor are probative facts found, which necessarily or
conclusively show the existence of the ultimate fact of an
easement appurtenant to lot 3, and charged upon the lot upon
which the spring is situated as the servient estate.   An ease-
ment can only be created by grant or by prescription from ad-
verse enjoyment for a period sufficient to bar an action; in
this state, five years.   At the time the spring was improved,

and the water conveyed to lot 2, appellant had no interest in that lot, nor had plaintiffs any interest in lot 3. Plaintiffs not only allege that the water was conveyed to lot 2 with the knowledge and consent of appellant, the owner of the spring, but Bell testified that he talked it over with one of the directors; and Mr. Harrison, a director and chairman of the executive committee of the corporation, testified that it was understood plaintiffs might use the spring so long as they did not need it. Under these circumstances, plaintiffs could acquire no right or easement in the spring, nor create any servitude upon the land on which the spring was situated, by possession and use under the license for any length of time, nor is there any evidence that they ever asserted any right otherwise than under this license. No easement was therefore created in favor of lot 2, nor could there be in favor of any other lot. Plaintiffs were not restricted by the terms of the license to a part of the waters of the spring, so there was no opportunity for acquiring a right to another portion of the water by adverse user. Of course, I do not mean to say that, notwithstanding the license, a right by adverse possession and use might not have been created; but that could only have been accomplished by a repudiation of the license, and the use of the water under an unequivocal assertion of right. But no claim or assertion of any such right was ever made until after the purchase of lot 3, and no adverse right in favor of lot 3 could have been created after that, as the water was cut off near the spring a few months after the purchase, and has never since flowed either to lot 2 or 3, through these pipes, or otherwise than through appellant's water-mains.

Plaintiffs' claim in this action is based, however, upon an easement appurtenant to lot 3, existing at the date of the purchase; and it is obvious that, unless it then existed, it could not have passed by the deed made nearly two years later, the water from the spring having soon after the purchase been cut off, and the right, by repeated disconnections with the tank, having been emphatically denied. The question remaining to be considered, therefore, is whether a right appurtenant to lot 3 was created by plaintiffs' use of the water thereon during the time they were in possession of that lot without right or title thereto, and which possession and use ceased one or two years before the purchase. The complaint

alleged that this use was open, and with the knowledge of appellant. The court found that the water was used upon lot 3 "after 1875, up to the time of the sale," but did not find that the use was known to appellant. No evidence was given on the part of the plaintiff that such use was known, unless it could be inferred from the cultivation of vegetables and the existence of hydrants thereon, while the testimony on the part of defendant was positive that such use was not known until after the pipe had been taken up at the spring, and the tank on the Forbes lot had been supplied from appellant's mains; that it was afterward found that the supply was short at the Forbes tank, and, upon investigating the cause, the pipe leading from the tank to lot 3 was discovered and disconnected, presumably at the date of the first interruption alleged in the complaint, viz., March 30, 1885. This evidence was not disputed, nor was there any evidence of any claim of right to such use of the water in hostility to or otherwise than under the license. The mere finding of the use, without finding that it was with the knowledge of appellant, who was the owner both of the lot and the water, is insufficient to support the judgment; and, if the existence of an easement is found by the court, the evidence does not justify it. It would, indeed, be a strange conclusion that plaintiffs, having a mere license to use the waters of the spring upon their own lot, could, without the knowledge of appellant, use it upon one of appellant's lots, in which they had no interest, and thus create an easement in favor of one of appellant's lots, and a servitude upon another, and then sell lot 2 to a third party, who acquired no right to the spring, and buy lot 3, with a valuable easement created by themselves, and of which the seller had no knowledge. The judgment and order appealed from should be reversed.

We concur: Searls, C.; Vanclief, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed.